UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA           CRIMINAL NO. 18-CR-00079-01

VERSUS                              JUDGE FOOTE

MARLON L. GLADNEY                   MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Marlon Gladney ("Defendant") is charged with conspiracy to possess with intent to distribute methamphetamine and possession of a firearm by a convicted felon. Defendant filed a motion to suppress evidence seized from him as well as statements he made during and after a traffic stop. Doc. 26. For the reasons that follow, it is recommended that the motion to suppress be denied.

**Facts**

An evidentiary hearing was held on Defendant's motion on July 27, 2018. The evidence at the hearing, and the video of the traffic stop, establishes the following facts. On October 27, 2017, the DEA asked the Louisiana State Police to watch out for Defendant's car because the DEA believed that Defendant may be transporting narcotics from Texas into Louisiana. DEA wanted Defendant's car stopped if independent probable cause was developed for the stop.

Trooper Matthew Titus parked on the left shoulder of the eastbound lanes of I-20 just west of the rest area and welcome center near the Louisiana/Texas border. When

Defendant's car passed Titus, the trooper pulled onto the interstate to follow Defendant. However, Defendant quickly pulled into the nearby rest area and stopped. Titus continued eastbound, just beyond the rest area, and parked on the right hand shoulder of the interstate.

A light bar was located on the roof of Titus' patrol vehicle. Titus activated the light bar in such a manner that the lights blinked sequentially in a right to left fashion, indicating to approaching vehicles that they should move from the right lane into the left lane. Govt. Ex. 1 (video of similar light bar). Titus referred to this light as his "directional arrow."

Defendant left the rest area and began traveling east bound again in the right lane. He failed to move over to the left lane when he passed Titus' patrol car. Titus then initiated a traffic stop (at mile marker 4) for Defendant's failure to yield to an emergency vehicle.

Trooper Titus approached Defendant (the sole occupant of the car) and explained the purpose for the traffic stop (violating the "move over law"). Titus asked for Defendant's driver's license. Defendant produced a Louisiana driver's license, but that license had expired several years earlier. Defendant stated that he had previously been unable to renew his license because of his child support obligations, but he was on his way to the Department of Motor Vehicles in Bossier City to obtain a valid license. Defendant reported that he currently lived in Dallas, Texas.

Defendant also produced his vehicle's registration and told Titus that the car was registered to his daughter, who lived in Springhill, Louisiana. Trooper Titus reported that Defendant seemed very nervous during their exchange and would not maintain eye contact.

Trooper Titus returned to his patrol vehicle and began to research Defendant's license and criminal history. He learned that the license was not only expired, but

suspended. During this process, Titus learned that Defendant had multiple narcotics arrests and a felony conviction for aggravated second-degree battery. Trooper Titus was already suspicious of criminal activity because of Defendant's travel itinerary (traveling from his home in Dallas to renew a license in Bossier City) and third party ownership of the vehicle. Because Defendant had a history as a violent felon, Titus called for backup.

After about four minutes of research, Trooper Titus returned to Defendant and asked him to step out of the car. Trooper Titus informed Defendant that his license was suspended and asked if someone could come pick up the car and him. Defendant said he could get someone to do that. Otherwise, Titus testified that he would have to have the car towed.

Titus then told Defendant that I-20 was a "bad road" and asked Defendant if he had drugs, large amounts of money, or weapons in the car. Defendant responded that there was a pistol under the front seat. Defendant admitted to Trooper Titus that he was a violent felon and that the pistol did not belong to him.

Trooper Titus asked Defendant for consent to search the car, and Defendant verbally agreed. Titus presented Defendant with a written consent form and asked Defendant to read along with him as he read the form. Defendant signed the consent to search form about eight minutes after the stop began.

Troopers Carson and Strickland arrived at the scene about the time the consent form was signed. The Troopers searched the car and asked occasional questions of Defendant, who stood in front of Titus' patrol vehicle and watched them. A canine was brought to the car and appeared to alert, but no drugs were found. After about thirty minutes, Defendant

was handcuffed for possession of the handgun. In the back of the patrol vehicle, Defendant offered information about other illegal activities and was taken to meet with a DEA Task Force agent.

**Law and Analysis**

Searches incident to traffic stops are analyzed under Terry v. Ohio, 392 U.S. 1 (1968). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007).

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Lopez–Moreno, 420 F.3d 420, 430 (5th Cir. 2005). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Lawful cause to make a traffic stop exists when a defendant commits a traffic violation and a law-enforcement officer observes the violation. United States v. Khanalizadeh, 493 F.3d 479, 482 (5th Cir. 2007).

Terry's first requirement is met in this case. Trooper Titus reported that the car passed him in the closest lane while his light bar was illuminated to direct traffic into the left lane. This is a violation of La. R.S. 32:125. Defendant testified that traffic was heavy and that he could not move over, but Defendant's testimony is not credible.

Of course, Titus' real reason to stop Defendant was to seek consent to search Defendant's car for drugs. Nevertheless, the stop was lawful. "Whren allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop." United States v. Cole, 444 F.3d 688, 689 (5th Cir. 2006). Here, the evidence establishes objective grounds for the stop.

Terry's second requirement is that an officer's actions were reasonably related in scope to the circumstances that justified the stop. This requirement is not fulfilled when an officer detains a vehicle's occupants beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops reasonable suspicion of additional criminal activity in the meantime. United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). If the officer develops reasonable suspicion of additional criminal activity during the investigation of the circumstances that originally caused the stop, the officer may further detain the occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion. Id.; United States v. Aguilera, 2014 WL 7404535, at *3 (N.D. Tex.).

An officer may examine driver's licenses and vehicle registrations and run computer checks as part of the investigation of the circumstances that originally caused the traffic stop. United States v. Pack, 612 F.3d 341, 349-350 (5th Cir. 2010). An officer is also permitted to ask questions on subjects unrelated to the circumstances that caused the stop, so long as the unrelated questions do not extend the duration of the stop. Id. The reasoning behind this rule is that the Fourth Amendment protects against detention, not questioning. Id.

Trooper Titus' discovery of Defendant's status as a violent felon was made while checking Defendant's expired license, vehicle registration, and criminal history. This discovery, together with the other facts known to Titus, created reasonable suspicion that was quickly confirmed when Defendant admitted there was a firearm under the seat. Brigham, 382 F.3d at 506.

The follow-up questions about the presence of illegal items in the car lasted less than a minute and did not unreasonably extend the duration of the stop. In fact, the traffic stop was not complete at the time these questions were asked and answered. Titus testified that Defendant would not be permitted to drive away from the scene due to his suspended driver's license. Someone was going to have to come and get Defendant and drive the car. These facts distinguish this case from the facts in United States v. Bell-Brayboy, 2017 WL 5078400 (W.D. La. 2017).

Defendant voluntarily and readily consented to the search of his car, both orally and in writing. In determining whether consent was voluntary, the court considers: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. United States v. Jenson, 462 F.3d 399, 406 (5th Cir. 2006). These factors, except perhaps the last, favor a finding of voluntary consent. Defendant was not free to leave, but he was not handcuffed or placed in the patrol car at the time of the consent. The troopers were very professional and used no coercive tactics. Defendant was exceedingly cooperative,

and the written consent form informed Defendant that he could refuse consent to search. Finally, Defendant knew incriminating evidence would be found because he had already told the trooper about the firearm.

Regardless of Defendant's consent, Defendant's admission that he was a felon and that a firearm was located under the seat of the car gave the troopers probable cause to search the car without a warrant. Collins v. Virginia, 138 S.Ct. 1663, 1669 (2018).

Defendant's motion also makes passing references to the suppression of statements made during and after the traffic stop. Because the stop and detention of Defendant were completely proper and Defendant's statements were voluntarily made, there is no basis to suppress those statements.

Accordingly,

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 26)** be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of August, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge